GEORGE L. INMAN

*v.*

ELIZABETH SWEARINGEN *et al.*

*Opinion filed October 25, 1902.*

1. DEEDS—*deed in grantee's possession is presumed to have been delivered.* If a duly executed deed is in the grantee's possession there is a presumption that it has been delivered, which can only be overcome by clear and convincing proof.

2. SAME—*when evidence tends to show that deed was delivered.* A deed from mother to daughter will be regarded as delivered, although unrecorded, where the notary who drew the same testifies that he delivered it to the daughter, whose husband testifies that he afterwards saw it in her possession, that it remained in her possession for some six years, and that he saw it in a box in their room three days after her death; and where the mother admits she signed some paper at the notary's office, but claims she took possession of it then and afterwards destroyed it with her daughter's consent, although it is proved that after her daughter's death she went to the notary's office and inquired for the deed.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. FRANCIS M. WRIGHT, Judge, presiding.

SPENCER M. WHITE, and RAY & DOBBINS, for plaintiff in error.

· F. M. GREEN & SON, and ROY WRIGHT, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill in chancery filed by George L. Inman, the plaintiff in error, in the circuit court of Champaign county, to remove a cloud from title. It is alleged in the bill that the defendant in error Elizabeth Swearingen, on or about August 1, 1893, executed and delivered a deed for lot 1 of block 6 of Griggs' first addition to St. Joseph, Champaign county, Illinois, to her daughter, Minnie E. Inman, the wife of plaintiff in error, conveying the fee to her daughter but reserving a life estate to herself; that

Minnie E. Inman went into possession of the premises
jointly with her mother; that she died January 26, 1899,
leaving her last will and testament, by which she devised
the premises to her husband, the plaintiff in error; that
this will was duly admitted to probate; that after the
death of Mrs. Inman Mrs. Swearingen made and deliv-
ered another deed for the premises to another daughter,
Nancy M. Robbins, also a defendant in error, purporting
to convey the same property to her and to reserve a life
estate to the grantor, as in the first deed. The first deed
was never recorded and could not be produced on the
hearing. The last deed was recorded. The cause was
referred to a special master, who reported the evidence
with his conclusions of law and fact, as directed, and
recommended a decree in favor of plaintiff in error as
prayed in his bill, but the court, on the hearing of excep-
tions to the master's report, sustained them, and found
that the alleged deed from Elizabeth Swearingen to Min-
nie E. Inman was never delivered, and dismissed the bill.

The testimony of V. J. Gallion, a notary public in
St. Joseph, Illinois, was, that Elizabeth Swearingen, in
company of her daughter Minnie E. Inman, went to his
office and requested him to write a deed for her con-
veying the premises in question (a hotel property) to her
said daughter, reserving possession of the same for her
lifetime. The notary drew the deed and Mrs. Swearingen
executed and acknowledged the same before him, and the
deed was left in his custody. His indistinct memory was
that it was agreed between Mrs. Swearingen and Mrs.
Inman that the deed was to be left in his office. Several
months afterwards Mrs. Inman got the deed. After her
death Mrs. Swearingen asked him if he knew where the
deed was. Mrs. Swearingen in her testimony admitted
that she went to the notary's office and fixed up some
kind of a paper, but did not read it, and claimed that the
notary gave her the paper right there and that she took
it home, and afterwards gave it to her daughter to keep

for her, and that it was kept in George L. Inman's safe; that some time before her death Mrs. Inman returned the paper in the original envelope to her, Mrs. Swearingen, —that is, what she supposed was the same paper,—and that she burned it up, with the consent of Mrs. Inman, who said she did not expect to outlive her mother. Mrs. Mahala Birdzell testified that she was on intimate terms with Mrs. Swearingen, and that several years before Mrs. Inman's death she had a conversation with Mrs. Swearingen, in which the latter told her that she had deeded the hotel property to her daughter Minnie; that it was right for her to have this, as the other daughter had more than her share. Mrs. Mary Gibson, another neighbor, testified that Mrs. Swearingen had talked with her about the hotel property being hers and Minnie's. George Thomas testified that Mrs. Swearingen asked his advice about the matter of settling the property on Minnie, and that he advised her to deed it to Minnie. Mary Hoss testified that about a month after Mrs. Inman's death she was sent for to come to the hotel, and was asked by Mrs. Robbins what Inman had told her about having a deed to the property, and in the conversation between Mrs. Swearingen and Mrs. Robbins that ensued, the latter asked her mother if it was so that she had made a deed to Mrs. Inman, and Mrs. Swearingen said that she did not know whether she did or not; that she had signed some kind of a paper, but did not know whether it was a deed or not. George L. Inman testified, in his own behalf, that he first saw the deed in the hotel shortly after it was executed, at a time when his wife and her mother were together and looking at it; that his wife kept it in the house, and took it with her, with her mother's knowledge, when he and his wife went to Pennsylvania; that it was kept in his safe as long as he owned the safe; that he saw it last about three days after Mrs. Inman's death, when it was in a plush box in a dresser drawer in the room he and his wife had occupied in the hotel; that

when he looked for it afterwards it was gone; that the deed was not recorded because Mrs. Swearingen thought it would make "such a fuss" with Mrs. Robbins if it was; that Mrs. Swearingen repeatedly talked about having deeded the property to Mrs. Inman. He prepared a copy of the deed, to the best of his recollection.

The chief contention is over the delivery of the deed. Taking all the evidence together, a delivery of the deed to the grantee seems to be fairly established. The notary says he gave it to Mrs. Inman. Plaintiff in error states that he had frequently seen the deed in his wife's possession and found it among her papers after her death. Mrs. Swearingen herself says she gave Mrs. Inman the paper she executed in the notary's office, although she declares that her daughter did not know what its contents were, and that it was kept in the safe of plaintiff in error. It is true, she claims a surrender of the paper and its destruction; but Inman says that he saw it three days after his wife's death, and the notary says that Mrs. Swearingen, after Mrs. Inman's death, asked him if he knew where it was. If she had destroyed it, as she testified, it does not seem probable that she would have asked the notary where it was. The evidence tended strongly to prove that the grantee had possession of the deed for about six years before her death, with the knowledge and consent of her mother. Where a duly executed deed is found in the hands of the grantee there is a strong implication that it has been delivered, and only clear and convincing evidence can overcome the presumption. *Griffin* v. *Griffin,* 125 Ill. 430; *Dunlop* v. *Lamb,* 182 id. 319.

We are of the opinion that the evidence sustained the allegations of the bill, and that the court erred in sustaining the exceptions to the master's report and in dismissing the bill. The decree will be reversed and the cause remanded, with directions to enter a decree in favor of plaintiff in error, as prayed in his bill of complaint.

*Reversed and remanded, with directions.*